## Scranton Medical Building v. Milkman

*Nogi, O'Malley & Harris*, for plaintiff.

*J. Julius Levy*, for defendant.

HOBAN, P. J., December 10, 1948.—The pleadings consist of a complaint in assumpsit, defendant's answer and an amended complaint. Both sides moved for judgment on the pleadings.

This is a suit to collect from defendant, a tenant in plaintiff's office building, certain moneys claimed to be due as rent for the premises occupied by defendant, and the determination of it hinges upon interpre-

tation of certain language in the lease and a rider thereto. By stipulation filed, the amount involved is limited to that accruing after April 1, 1947, and defendant has continued to pay rent at the basic rate which he claims is due according to his interpretation of the documents of lease. The amount in dispute, therefore, is the difference between the rates claimed by each of the parties.

The lease, dated January 7, 1944, provided for occupancy by defendant for a term of five years commencing April 1, 1944, at a basic rate of $236.56 per month, with a hold-over provision, after notice, for an additional year at the same rate, "subject to the adjustment provided in the rider attached hereto and made a part hereof". The phrase in quotation was inserted in the special printed lease form in typewriting. Thus, according to the usual interpretation of leases, where special typed matter or addenda are included within a printed lease, insofar as the inserted or attached matter conflicts with the printed provisions of the lease, the inserted or attached matter governs.

The rider attached to the lease, and bearing the same date of execution, contains the following paragraph, the interpretation of which gives rise to this dispute:

"The rental rate now generally prevailing for office space in the said Medical Arts Building is $2.50 per square foot per year payable monthly in equal monthly installments less a discount of ten per cent on each month's rent paid currently by the 10th of the month provided no rent is delinquent. In the event the said rental rate now prevailing in said Medical Arts Building is hereafter changed, then and in that case it is agreed by the parties hereto that after the month of March, 1947 and for the balance of said lease term and/or any renewal or renewals thereof, said Lessee shall pay to said Lessor monthly an increase in the

monthly rental hereinabove agreed to be paid in proportion to the increase in said rental rate if the same has been increased and if the same has been decreased a proportionate decrease in said rental, anything herein to the contrary notwithstanding."

By a letter dated September 21, 1946, addressed to all tenants of the Medical Arts Building, in which the demised premises are located, and which was duly received by defendant, the managing agent of the building notified all tenants, including defendant, that while the owners had granted to all tenants during the depression a discount of 10 percent on the monthly rental called for under the leases, because of the fact that the depression had disappeared and costs of operation and maintenance had increased, the 10 percent rental discount was discontinued as of September 30, 1946, and that commencing October 1, 1946, the regular rental called for under the terms of the lease would be due and payable on the first of each month thereafter, in advance.

In effect this letter worked a change in the rental base generally prevailing in the Medical Arts Building as contemplated by the paragraph from the rider quoted above, and certainly according to the terms of the rider could not be applied to defendant's lease until after the month of March 1947, a fact which is apparently recognized in the stipulation agreed to by the parties, confining this claim to rent accruing after April 1, 1947.

On March 12, 1948, plaintiff through its managing agent informed defendant that it had made an increase of 10 percent in the generally prevailing rental rate for office space in the building, effective April 1, 1948, and that defendant's rental on and after that date would be at the rate of $260.22 per month, which, with additions for the use of electric current and auto-

mobile storage space, would make the monthly rate $271.82 per month.

Defendant, in spite of this notice, continues to claim that the amount due from him is at the rate of $224 a month, which represents the original rate set in the lease, plus the additions for use of electrical energy and automobile storage space, less 10 percent discount for payment of each month's rent prior to the tenth of the month in which rent accrues.

The sole question at issue is whether or not under the term of the lease and rider defendant can continue to claim his 10 percent deduction for prompt payment, in the face of the notifications of September 21, 1946, and March 12, 1948.

We are of the opinion that defendant has clearly bound himself by the terms of the rider to conform to changes in the rental base, either by way of increase therein to the natural hurt of his pocketbook or by reason of decrease therein should it occur to his advantage, so long as the increases or decreases are general to all the tenants in the building. It is true, as contended by defendant, that his personal right to take advantage of the 10 percent discount is fixed by the writing, that is, the rider, and does not come about by any general concession granted to all the tenants, but only to the extent that a change in his rental base would not be effective until April 1, 1947. Thereafter changes in the base rental structure applicable to all tenants apply equally to him. It seems to us captious to argue that the elimination of the 10 percent discount was not itself a change in the rental base, since clearly the only income to be anticipated from the building while the discount privilege was in effect would be the underlying rate, less 10 percent. The elimination of the discount worked a complete change in the whole rent structure of the building. Nor can we see anything in the language of the rider to prohibit further

or periodic changes in that rent structure, whether by way of increase or decrease in the footage rate.

We are offered no citations to support any other interpretation and, indeed, we feel that none are necessary, since essentially the question comes down to what is the plain meaning of the language used in the rider. We see nothing therein to prohibit the changes in defendant's rental made by plaintiff, so long as they are confined to the period commencing April 1, 1947. Accordingly, we enter judgment for plaintiff.

Now, December 10, 1948, judgment is entered in favor of plaintiff and against defendant in the sum of $481.20, to include arrearages in rent due July 1, 1948.